DECISION
{¶ 1} In this original action, relator, Ronald L. Gardner, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order granting him the requested PTD compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the *Page 2 
evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion in denying his request for PTD compensation and, therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} In his objections, relator makes two arguments: (1) the magistrate failed to properly apply the definition of sedentary work found in Ohio Adm. Code 4121-3-34(B)(2)(a); and (2) the commission ignored evidence. Upon review, however, we do not find relator's objections to be well-taken.
 {¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
 SADLER and TYACK, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered September 9, 2008 IN MANDAMUS {¶ 5} Relator, Ronald L. Garnder, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for permanent total disability ("PTD") compensation and ordering the commission to grant him that compensation. *Page 4 
Findings of Fact: {¶ 6} 1. Relator sustained a work-related injury on August 6, 1991, and his claim has been allowed for "cervical strain; cervical disc displacement; brachial neuritis; aggravation of pre-existing cervical spondylosis; depressive disorder; psychogenic pain disorder."
 {¶ 7} 2. Relator filed an application for PTD compensation in June 2007. At the time, relator was 50 years old. Relator had completed the tenth grade in 1972, left school to pursue full-time employment, and did not receive his GED. Relator indicated that he could read, write, and perform basic math, but not well. Relator attended MTA Truck Driving School in 1985 and obtained a certified driver's license. Relator's prior work history was as a dry wall stocker, boom operator and packer and truck driver. On his application, relator indicated that his truck driving job required him to review and write log sheets, product counts, read maps, and review bills.
 {¶ 8} 3. Relator submitted the May 3, 2007 report of his treating psychologist Janice W. Bosley, Ph.D. Dr. Bosley noted that she was seeing relator every three weeks, that relator had been placed on at least three different anti-depressant medications with minimal success, and that his pain causes significant emotional distress and marked impairment in social and occupational functioning. Dr. Bosley opined that relator was permanently and totally disabled as a result of his psychological condition.
 {¶ 9} 4. Relator also submitted a functional capacity evaluation prepared by physical therapist James A. LaMastra. In his report, LaMastra provided objective findings and ultimately concluded that relator was physically functioning below the sedentary *Page 5 
physical demand level and that he could not perform many of the physical demands of even a sedentary job due to both his physical limitations and related symptom issues.
 {¶ 10} 5. Relator was examined by Andrew Freeman, M.D., at the commission's request. In his October 23, 2007 report, Dr. Freeman set out his physical findings upon examination and concluded that relator's allowed physical conditions had reached maximum medical improvement ("MMI"), that relator had a 15 percent whole person impairment, and that he was capable of performing at a sedentary work level with limitations of no reaching, or overhead work with his right arm.
 {¶ 11} 6. Relator was also examined by Lee Howard, Ph.D., for his allowed psychological conditions. In his October 23, 2007 report, Dr. Howard subjected relator to various tests. In his opinion, relator's test results for the Structured Inventory of Malingered Symptomatology were highly suspicious for a malingering tendency and indicated that the results reflect a tendency to simulate symptomatology, emotional symptomatology, psychosis, loss of intelligence, and loss of memory. Ultimately, Dr. Howard concluded that relator's allowed psychological conditions had reached MMI, assessed a 12 percent whole person impairment, and concluded that relator could perform at the simple task range, but not at the moderate or complex task range.
 {¶ 12} 7. A vocational evaluation was prepared by Diana Hardbarger, MA, CRC, in February 2007. Ms. Hardbarger concluded that relator was not employable and, unless there was marked improvement in his function, attempts at vocational rehabilitation would be unproductive.
 {¶ 13} 8. Relator's application was heard before a staff hearing officer ("SHO") on January 16, 2008 and was denied. The SHO relied upon the medical reports of Drs. *Page 6 
Freeman and Howard. As such, the SHO found that relator was capable of performing at a sedentary work level with no reaching or overhead work with his right arm and that he was capable of performing work at the simple task range. Thereafter, the SHO analyzed the nonmedical disability factors. The SHO concluded that relator's age was a vocational asset providing him with sufficient time to acquire new job skills, at least through informal means such as short-term or on-the-job training, to enhance his potential for reemployment. The SHO concluded that relator's tenth grade education was a neutral vocational asset under the circumstances. The SHO cited the report of Dr. Howard wherein he indicated that relator could read and write "pretty well." Additionally, the SHO noted that relator had been able to attend the MTA Truck Driving School and receive his license to operate a truck. The SHO concluded that relator's work history was a positive vocational asset. The SHO noted that, as a truck driver, relator was responsible for reviewing and writing in log sheets, product counts, reading maps, and reviewing bills. The SHO found that, based upon relator's basic literacy skills, vocational training, and his experience as a truck driver, he had sufficient education, intellect, and literacy abilities to obtain and perform activity at levels described by Drs. Freeman and Howard.
 {¶ 14} 9. Relator's request for reconsideration was denied by order of the commission mailed March 3, 2008.
 {¶ 15} 10. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. *Page 7 Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 17} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 18} Relator argues that the commission abused its discretion in denying his application for PTD compensation. Specifically, relator points out that, in the functional capacity evaluation dated January 22, 2007, the examiner concluded that he could not perform many of the physical demands of even a sedentary job due both to his physical *Page 8 
limitations and related symptom issues. Further, relator points out that his treating physician, Dr. Bosley, concluded that, from a psychological perspective, relator was not able to perform some sustained remunerative employment. Relator notes that Dr. Howard indicated the presence of suicidal ideation with both a planned and steps taken toward that plan, visual hallucinations, limited long-term memory, a low general fund of knowledge, a limited ability to abstract, and poor concentration. In spite of these findings, Dr. Howard determined that he was able to perform work in the simple task range. Relator points out that this conclusion is directly contrary to the conclusion of Dr. Bosley. Further, relator points out that the only vocational report in the record indicates that he is not employable.
 {¶ 19} Relator argues that the commission either inadvertently or intentionally ignored the functional capacity evaluation, the report of Dr. Bosley, and any other reports from his treating physicians. Relator argues that the commission should explain why this evidence was not considered.
 {¶ 20} For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 21} Relator cites the case of State ex rel. Fultz v. Indus.Comm. (1994), 69 Ohio St.3d 327, in support of his arguments. InFultz, the commission specifically noted in its order that it had considered certain evidence and specifically listed the evidence considered in reaching the determination. The commission failed to note that the two vocational reports in the record were among the evidence the commission considered. In granting the claimant a writ of mandamus, the Supreme Court of Ohio stated: *Page 9 
 * * * While the commission correctly contends in essence that it need only enumerate the evidence relied on, the fact that the commission in listing the evidence considered omitted those two reports from that list, leads to only one conclusion — the commission either inadvertently or intentionally ignored that evidence. * * *
Id. at 329.
 {¶ 22} In the present case, the commission did not list all the evidence which was considered. Instead, the commission only identified those reports upon which the commission relied in reaching its decision to deny relator TTD compensation. There is no Fultz violation here and, because the commission is only required to list those reports upon which the commission relies, this argument lacks merit.
 {¶ 23} Relator also argues that the reports upon which the commission relied indicate that his physical ability to work is below the sedentary level. Specifically, relator points out that Dr. Freeman opined he could perform sedentary work with the restriction of no reaching or overhead work with his right arm.
 {¶ 24} Contrary to relator's arguments, the above limitation does not render him capable of something less than sedentary work. The lifting restrictions provided in the Ohio Administrative Code express the outer limits of exertion which a job can have and still be sedentary. At oral argument, counsel conceded that there are sedentary jobs which can be performed with relator's restriction, but asserts that the commission was required to provide further discussion of this issue. The magistrate disagrees.
 {¶ 25} Lastly, relator contends that the commission should have relied on the vocational report. However, to bind the commission to a vocational report's conclusions *Page 10 
makes the vocational examiner, not the commission, the ultimate evaluator of disability, contrary to Stephenson. As such, this argument also lacks merit.
 {¶ 26} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying him PTD compensation, and this court should deny relator's request for a writ of mandamus. *Page 1